1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| TOHMA L. WILLIAMS, | CV F   04-5203 DLB HC |
|       Petitioner, | ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT |
| v. | |
| D. ADAMS, | [Doc. 7] |
|       Respondent. | |
| _____/ | |

10
11
12
13
14
15
16
17

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

18
19

<u>PROCEDURAL BACKGROUND</u>[1]

On January 24, 2002, in the Kern County Superior Court, Petitioner pled no contest to one count of second-degree robbery in violation of California Penal Code[2] section 212.5(c). Petitioner also admitted that he had previously suffered two prior serious and/or violent felonies (§§ 667(c)-(j), 1170.12(a)-(e)) within the meaning of California's Three Strikes law.  Petitioner was sentenced to state prison for a total term of twenty-five years to life.  (Respondent's Exhibit 1, attached to Answer.)

20
21
22
23
24
25
26
27
28

---

[1] This information is derived from Petitioner's amended petition for writ of habeas corpus and Respondent's answer.

[2] All further statutory references are to the California Penal Code unless otherwise indicated.

1    Petitioner filed a timely notice of appeal to the California Court of Appeal for the Fifth

2    Appellate District.  On December 17, 2002, the Court of Appeal affirmed the judgment and

3    conviction.  (Respondent's Exhibit 3, attached to Answer.)

4    On January 28, 2003, Petitioner filed a petition for review with the California Supreme

5    Court.  The petition was denied on March 5, 2003.  (Respondent's Exhibit 4, attached to

6    Answer.)

7    Petitioner filed the instant federal petition for writ of habeas corpus on January 30, 2004.

8    Petitioner filed an amended petition on April 9, 2004.  Respondent filed an answer on July 28,

9    2004.[3]  Petitioner filed a traverse on August 23, 2004.  Pursuant to the Court's order of July 8,

10   2005, Respondent filed a supplemental answer which addressed the claims raised in the amended

11   petition.  Petitioner filed a supplemental traverse on January 23, 2006.

12                                   STATEMENT OF FACTS[4]

13   At approximately 11:20 p.m., on September 30, 2001, Bakersfield Detective Dennis

14   McBride responded to call regarding a robbery at the Albertson's Supermarket on Panama Lane

15   in southwest Bakersfield.  (CT 18-19.)  A Wells Fargo Bank branch was located inside the

16   Albertson's store.  (CT 19-20.)  Lacy Curry worked as a teller.  (Id.)  Curry told Detective

17   McBride that as she was waiting on a customer, she saw a man go over the counter, into the

18   employee area and demand money.  (CT 20.)  The man was wearing a dark sweatshirt, with the

19   hood pulled up, and a ski mask with holes for his eyes.  (CT 22.)  When the man approached her,

20   she gave him money, as did another teller.  (Id.)  Although she did not see a gun or knife, Curry

21   thought the man may have been armed, and was afraid.  (CT 47.)

22   While another Wells Fargo Bank teller, Dasant Sandhu, was assisting a customer, a man

23   jumped on top of the counter toward Mr. Sandhu and demanded money.  (CT 108-109.)  Dasant

24   opened the cash drawer and the suspect pulled the money out of the register and put it in a white

25   plastic bag.  (CT 109.)

26   ───────────────

27   [3] Respondent inadvertently filed a response to the initial, not amended petition.

28   [4] Because Petitioner pled no contest to the second-degree robbery charge, the facts of the robbery are taken
     from the transcript of the preliminary hearing.

1    It was estimated that the robbers fled with approximately $5,000.  Three stacks of $20

2    bills containing bait money were also taken.  (CT 22-25, 109.)  Photocopies of the bait money

3    were given to Detective McBride.  (CT 24.)

4    Katrina Burke, a grocery checker at Albertson's was simultaneously robbed.  (CT 100-

5    102.)  Burke reported that at the time of the robbery, she was behind the service counter.  She

6    was approached by a Black male, who was wearing a white beanie and a dark blue bandana to

7    cover his face.  The man, who was covering his right hand with a white canvas bag, said "give

8    me your money."  (CT 103.)  After she gave the man about $500, he reached over the counter and

9    took some additional money.  He placed it into his bag and left the store.  (CT 102-104.)

10    Joey Cofer told Detective McBride that as he was leaving the store, he saw a Black male,

11    with a bandana covering his face, reaching across the counter into the customer service area.  (CT

12    25-26.)  Cofer went outside and saw the two men walk past him and get into a maroon car, which

13    was driven by another Black male.  (CT 27.)  Cofer memorized the license plate, went back into

14    the store and gave it to a store employee.  (CT 27-28.)  Detective McBride interviewed Cofer in a

15    parking lot behind the grocery store.  During the interview, Cofer identified an abandoned

16    maroon vehicle, which had been found near the intersection of Panama and Casselford, as the

17    vehicle he saw in front of Albertson's.  (CT 28.)

18    While inside the store, Amy Bryant witnessed the robberies of both Wells Fargo Bank

19    tellers.  In the parking lot, she saw both suspects get into a maroon Chevy Caprice.  (CT 112-

20    113.)

21    Kari Eady told Detective McBride that while she was sitting in a parked vehicle with her

22    mother and sister on the south side of Albertson's, she heard the sound of screeching tires

23    coming from a maroon vehicle.  The operator of the maroon vehicle drove along the side of the

24    bank and stopped.  Three men exited the vehicle and ran around a block wall which separates an

25    alley behind Albertson's with Casselford.  (CT 28-30.)  Eady described the three as large males,

26    wearing dark clothing; with the exception that one of the men might have been wearing white

27    pants.  (CT 30.)  When Detective McBride inspected the maroon vehicle, the doors were open

28    and the vehicle was running.  (CT 42.)

1   Thomas Fuentes told Detective McBride that he was driving in the alley, approaching

2   Casselford, preparing to make a left turn.  (CT 30-31.)  He saw four men, each wearing long

3   sleeved shirts and something covering their faces, jump over the block wall behind Albertson's

4   and get into a white Dodge Durango.  (CT 32-33.)

5   A white Dodge Durango was impounded in a neighborhood two miles northeast of the

6   Albertson's.  (CT 34, 65.)  The vehicle was registered to Enterprise Leasing, and was one of

7   several vehicles rented by Kizzie Knight.  (CT 35, 37.)  Witnesses told Bakersfield Police Officer

8   Randy Moe that they saw a Black male wearing black clothing leaving the vehicle.  (CT 66.)

9   Officer Moe walked around the neighborhood and found Petitioner about four to five blocks

10  away.  Although Petitioner appeared to be calm, he was sweating profusely.  Inside Petitioner's

11  right front pant's pocket was the vehicle registration for the white Dodge Durango, a paycheck

12  and a paper driver's license.  (CT 68, 70.)  Petitioner, who was wearing a gray shirt and black

13  baggy jeans, did not have any $20 bills.  (CT 70.)  Petitioner's fingerprints were found on a tube

14  of toothpaste which was recovered from inside the Dodge Durango.  (CT 85.)  A bucket of water

15  containing more than $5,500 was discovered on the right rear floorboard.  Serial numbers on

16  three of the $20 bills found inside the bucket matched the serial numbers on the bait money that

17  had been previously recorded by the bank.  A white pillow case containing $21 was also

18  recovered from inside the Dodge Durango.  (CT 89-90.)

19  About 11:14 a.m., on September 30, 2001, Ramon Vargas reported that his maroon

20  Chevy Caprice had been stolen from the parking lot of a local swap meet.  (CT 75-78.)  When the

21  vehicle was recovered, it had a "punched" steering column.  He did not give anyone permission

22  to take the vehicle.  (CT 78.)

23                                         DISCUSSION

24  A.    Jurisdiction

25  Relief by way of a petition for writ of habeas corpus extends to a person in custody

26  pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

27  or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

28  529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered

4

violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises

out of the Kern County Superior Court, which is located within the jurisdiction of this Court.  28

U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S.

1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting

Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.

1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

(1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.      Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with

respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States;" or "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State Court

proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of

the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.

Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly."  Lockyer, at 1175 (citations

omitted).  "Rather, that application must be objectively unreasonable." Id. (citations omitted).

1    While habeas corpus relief is an important instrument to assure that individuals are

2    constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

3    (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

4    criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v.

5    Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

6    factual determinations must be presumed correct, and the federal court must accept all factual

7    findings made by the state court unless the petitioner can rebut "the presumption of correctness

8    by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

9    S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,

10   110 F.3d 1380, 1388 (9th Cir. 1997).

11   Application of these standards is significantly impeded where the state court supplies no

12   reasoned decision.[5] Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir.2000).  Under such

13   circumstances, the Court independently reviews the record to determine whether the state court

14   clearly erred in its application of Supreme Court law. Delgado v. Lewis, 223 F.3d 976, 982 (9th

15   Cir.2000) ("Federal habeas review is not de novo when the state court does not supply reasoning

16   for its decision, but an independent review of the record is required to determine whether the

17   state court clearly erred in its application of controlling federal law."); see also, e.g., Greene v.

18   Lambert, 288 F.3d 1081, 1089 (9th Cir.2002).  That is, although the Court independently reviews

19   the record, it still defers to the state court's  ultimate decision.

20   C.    Trial Court's Failure to Dismiss One of Prior Strike Convictions

21   Petitioner contends that the trial court abused its discretion and denied him due process

22   by denying his motion to dismiss one of the two prior strike convictions.

23   Respondent contends that this claim fails to state a cognizable federal claim.

24   Respondent's contention has merit.  To the extent Petitioner contends that the trial court abused

25

26        [5]Although the California Court of Appeal provided a reasoned decision with respect to Petitioner's direct
27   appeal wherein he raised the claim that the trial court abused its discretion by failing to dismiss one of the prior
     convictions, the other claims before this Court were presented to the state court's via habeas corpus wherein a
28   summary denial issued.  See, Respondent's Lodged Items Docs. 1 through 6, lodged October 11, 2005.  To those
     claims, the standard pronounced in Delgado is applied to Sections D through G herein.

its discretion under California law by denying his motion to strike one of the two prior strike offenses, it is not cognizable under § 2254.  See Miller v Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (the determination whether a prior conviction qualifies for a sentence enhancement under California law is not a cognizable federal claim).  Habeas corpus relief is not available to correct alleged errors in the state court's application or interpretation of state law.  Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991); Middleton v. Cupp, 768 F.2d 1083, 1084-85 (9th Cir.1985).  Federal habeas review is limited to a determination of whether the alleged error of state law "so infected the trial with unfairness as to deny due process of law".  Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 482 (1991).

To the extent Petitioner's claim is reviewable based on the denial of due process of law, it is without merit.  As previously stated, Petitioner pled no contest to one count of second-degree robbery in violation of section 212.5(c), and admitted two prior felony "strike" convictions.  (CT 188-190, 193-202.)  In exchange for the plea, two other counts of second-degree robbery, one count of vehicle theft and one count of conspiracy to commit second-degree robbery were dismissed with a Harvey waiver.  (CT 189.)  As a further condition of the plea, Petitioner was aware that he would be sentenced to no more than twenty-five years to life in prison.  (Id.)

On January 22, 2002, Petitioner's trial counsel filed a Sentencing Statement and a Request For A Dismissal of a Prior Strike Conviction.  (CT 204-212.)  The request was made on the basis that his two prior strike convictions were part of a single incident.  During that incident, Petitioner alleges that his co-defendant robbed two victims with a gun, shooting one of the victims in the leg.  (CT 205.)  Petitioner claims that he merely assisted in the robbery by driving the getaway car.  (Id.)  Because the two strike convictions were part of one robbery, during which he drove the getaway car, Petitioner urged the trial court to treat his two prior strike convictions as a single strike for sentencing purposes.  (Id.)  In addition, Petitioner urged the trial court to strike one of his two prior strike convictions on the basis that after completing his prison sentence stemming from his two strike convictions, he sought and maintained employment.  (Id.)

On January 24, 2002, the trial court heard Petitioner's motion.  (RT 2-10.)  After listening to argument from both sides, the trial court stated:

Well, as we discussed at the time of our readiness discussions, this is a very difficult Romero motion for the defense, based on the fact, if nothing else, that we're involved in another very serious criminal offense, a serious and violent criminal offense, with the prior - - two prior convictions or the conviction of two prior serious and/or violent offenses, which makes it extremely difficult for the defense to prevail on a Romero motion.

And I will compliment counsel in - - I suspect, ringing everything that could be rung out of this particular situation, and I think there is some merit to the argument that's been made by counsel, that the two offenses that were pled to, back in February of '95, of course, after the three strike law had been in existence for awhile, included one offense that was clearly at that time a strike, but one that was not at that time a strike, which was subsequently made a strike, with the enactment of Proposition 21.

Nevertheless, at the time the offense in question that brings [Petitioner] before this court was committed, the law was well settled, and I'm sure [Petitioner] was well aware of his status as a potential three striker.

What is probably most persuasive and - - in considering the Romero issue, other than, of course, the fact that the - - this offense is a serious and violent felony, is the fact that [Petitioner] committed this offense within two months of the time he was finally paroled for commit go [sic] virtually the same of [sic] offense back in 1994.

It seems fairly clear that [Petitioner], for lack of a better term, is a professional bank robber, and is some with one [sic] - - or a professional robber I suppose is a better way to put it, or at least - - and takes the role apparently as the wheel man, as it's sometimes put, and it is interesting to note, as counsel pointed out, [Petitioner] saw fit to plan this out enough in advance to make the trip from Los Angeles to Bakersfield, and steal a car to facilitate the get away, if you will.

So there is certainly enough planning involved in going on with his career as a wheel man, in a robbery team.

Under the circumstances, this court does not feel that in spite of the arguments of counsel to the contrary, that this is [sic] is a case in which the Court should exercise discretion and strike one of the strikes for purposes of sentencing.

In this particular situation, and based on the factors that I've mentioned, this does appear to be clearly within the spirit of the three strikes law, clearly exactly what three strikes was directed to stop, with regard to future conduct, and under the circumstances, the Romero request will be denied.

(RT 9-10.)

In rejecting Petitioner's claim on direct appeal, the Court of Appeal stated:

In the present case the trial court's refusal to strike one of [Petitioner's] prior convictions clearly was not an abuse of its discretion. The refusal to strike a prior clearly was not "outside the bounds of reason under the applicable law and the relevant facts." [Citation.] at age 19 [Petitioner] was convicted of carrying a concealed firearm. (Pen. Code, § 12025, subd. (b.).) He was sentenced to one day in jail and two years of misdemeanor probation. While still on probation and at the age of 20 he was convicted of carrying a loaded firearm. (Pen. Code, § 12031, subd. (a.).) He was sentenced to 90 days in jail and three years of misdemeanor probation. Later that same year, and while still 20 years old, he was convicted of remaining at the place of a riot after having been lawfully warned to disperse. (Pen. Code, § 409.) He was sentenced to 60 days in jail.

At the age of 22 he was convicted of robbery (Pen. Code, § 211) and assault with a firearm (Pen. Code, § 245, subd. (a)(2)). He was sentenced in February of 1995 to five years in prison. He was paroled in January of 1998 and

then violated parole.  He was paroled in December of 1998 and again violated parole.  He was paroled in March of 2001 and again violated parole.  He was paroled again on August 12, 2001. [Petitioner] committed the current crime on September 30, 2001, only a month and a half after his August 12, 2001 release on parole.  He and at least two other cohorts robbed approximately $5,700 at a supermarket and a bank branch apparently located in the supermarket.  They attempted to escape in a car that was later determined to have been stolen.  They abandoned that car and then attempted to escape in a vehicle that had been rented by [Petitioner's] girlfriend in Los Angeles. [Petitioner] committed the current robbery in Bakersfield in Kern County.  He had previously offended in Los Angeles and San Bernardino counties.  He was still only 28 years old at the time he committed the current robbery.  When he was interviewed by the probation officer prior to sentencing, he displayed no remorse and instead denied committing the robbery.  It is hard to imagine how this [Petitioner] could be deemed "outside the scheme's spirit, in whole or in part, and hence . . . treated as though he had not previously been convicted of one or more serious and/or violent felonies." [Citation.]

(Respondent's Exhibit 3, at 5-6.)

As the Court of Appeal stated, the trial court properly and carefully exercised its discretion in not striking one of Petitioner's prior strike convictions finding that he was not outside the spirit of California's Three Strikes law.  The Court of Appeal's decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  28 U.S.C. § 2254(d).

D.    Ineffective Assistance of Counsel

Petitioner contends that trial counsel was ineffective for failing to adequately investigate, produce, or subpoena witnesses at trial, present expert testimony, produce exculpatory evidence such as the "911" tape, and producing the California Department of Corrections 969b packet [for proof of his prior strike convictions].  Petitioner further claims that trial counsel failed to make use of Petitioner's limited intelligence, erroneously advised him to enter into a plea agreement, and permitted him to plead guilty even though there was no factual basis for the plea.[6]  (Amend. Pet. at 5, 42-44, 60-65 [appendix A].)

The Supreme Court has stated that:

When a criminal defendant has solemnly admitted in open court that he is in fact

---

[6] Petitioner conclusory and self-serving contention raised for the first time in his traverse that counsel advised him he would only receive a 15 year sentence, is not reviewable as it is raised for the first time in the traverse and is unexhausted.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (noting that a district court need not consider claims raised for the first time in a traverse).

> guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608 (1973); McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449 (1970) (holding that a defendant who pleads guilty on the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases); see also Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994).

By pleading guilty, a defendant waives the right to a jury trial, to confront one's accusers, to compel the attendance of witnesses, and generally to challenge the evidence that he committed the offense.  See Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709 (1969).  Typically, one who enters a valid guilty plea, cannot on habeas corpus challenge pre-plea constitutional violations. Tollett v. Henderson, 411 U.S. 258, 266-67, 93 S.Ct. 1602 (1973);  see also Moran v. Godinez, 57 F.3d 690, 700 (9th Cir.1994) ("As a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations"). Such a petitioner may only contend that his guilty plea was not voluntary and intelligent (see  e.g., Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 369 (1985); Boykin, 395 U.S. at 242-43, 89 S.Ct. at 1711-12) or challenge the assistance of counsel under the Sixth Amendment. See e.g., McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449 (1970); Tollett, 411 U.S. at 267, 93 S.Ct. at 1608; Hudson, 760 F.2d at 1030.

Petitioner's claims, whether pre-plea or post-plea, are governed by the same standard of review as set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984).  In Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366 (1985), the Supreme Court applied the Strickland test to attacks on guilty pleas based on alleged ineffective assistance of trial counsel.  Hill, 474 U.S. at 56-60, 106 S.Ct. at 369-71.  Under Strickland, the reversal of a conviction is required if counsel's errors were so serious that counsel was not functioning as the Sixth Amendment guaranteed counsel, and that counsel's "deficient performance prejudiced the defense."  Strickland, 466 U.S.

at 687, 104 S.Ct. at 2064.

First, Petitioner must show that trial counsel's performance was outside the wide range of reasonable, professional judgment considering all of the circumstances. Strickland, 466 U.S. at 687-90, 104 S.Ct. at 2064-66; see also McMann, 397 U.S. at 771, 90 S.Ct. at 1449; United States v. Signori, 844 F.2d 635, 638 (9th Cir. 1988). There is a "strong presumption that counsel's performance f[ell] within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381, 106 S.Ct. 2572, 2586 (1986), quoting, Strickland, 466 U.S. at 689, 104 S.Ct. at 2065; Bloom v. Calderon, 132 F.3d 1267, 1270 (9th Cir. 1997).

Second, Petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693-94, 104 S.Ct. at 2067-68; Bloom, 132 F.3d at 1271. In other words, Petitioner "must show that there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59, 106 S.Ct. at 370; United States v. Roberts, 5 F.3d 365, 370 (9th Cir. 1993).

In determining whether counsel was ineffective in advising a petitioner to plead guilty because counsel did not "investigate or discover potentially exculpatory evidence, the determination whether the 'error 'prejudiced'" petitioner depends on whether the discovery of the evidence would have caused counsel to not only have advised the petitioner to go to trial, but also whether the trial's outcome would have been favorable to petitioner because of the undiscovered evidence. Hill, 474 U.S. at 59, 106 S.Ct. at 370.

The Court must evaluate the evidence available to trial counsel at the time he advised petitioner to pled guilty to determine whether trial counsel's advise was incorrect. See Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

Initially, with regard to Petitioner's claims of ineffective assistance based on counsel's failure to adequately investigate, produce or subpoena witnesses at trial, present expert testimony, and produce exculpatory evidence such as the "911" tape, the claims are without merit. Petitioner's guilty plea forecloses the necessity for counsel to produce the evidence of which Petitioner complains. At the time of entry of the plea, Petitioner was specifically advised that he had the right to have a trial, where his attorney would have the right to confront and cross-

1   examine witnesses testimony, and that he had the right to put on his own defense, and that by

2   pleading guilty he gave up his right to have a trial, to which he affirmatively agreed and waived.

3   (CT 195-196.)  Petitioner's declarations in open court at a plea proceeding "carry a strong

4   presumption of verity."  See Blackledge v. Allison, 431 U.S. 63, 74 (1977).  Thus, counsel could

5   not have been incompetent by failing to present the evidence of which Petitioner complains.

6          Moreover, to the extent these claims can even be construed as attacking the voluntariness

7   and validity of the guilty plea (see United States v. Keller, 902 F.2d 1391, 1394 (9th Cir. 1990)

8   (citing Torrey v. Estelle, 842 F.2d 234, 237 (9th Cir. 1988)), beyond Petitioner's conclusory

9   allegation, he has failed to demonstrate that but for counsel's errors he would not have pled

10  guilty and would have insisted on going to trial, thereby demonstrating a reasonable probability

11  that the result of the outcome would have been different.  Strickland, 466 U.S. at 694.  Further,

12  Petitioner has failed to demonstrate, beyond his conclusory allegations, how the discovery or

13  presentation of this evidence would have caused counsel to not only have advised him to go to

14  trial, but also that the trial's outcome would have been favorable to petitioner because of the

15  undiscovered evidence.  Hill, 474 U.S. at 59, 106 S.Ct. at 370.  As such, Petitioner's claim fails.

16         With regard to Petitioner's claims of ineffective assistance based on counsel's failure to

17  make use of his limited intelligence, erroneous advice to enter into a plea agreement, and lack of

18  factual basis for the plea, the claims are without merit.  Petitioner asserts nothing more than

19  conclusory statements in support of his argument.  In fact, as Respondent submits, Petitioner

20  received a substantial benefit from the plea agreement because the prosecution dismissed two

21  counts of second degree robbery, one count of theft and unlawful driving of a vehicle and one

22  count of conspiracy to commit a second degree robbery.  In addition, Petitioner's sentence range

23  was capped at the maximum sentence of 25 years to life, even though he could have been

24  sentenced to a greater term based on his plea; that is, Petitioner could have received an additional

25  five year sentence for the section 667(a) enhancement that he admitted.  (CT 198-199.)  Without

26  the plea, Petitioner's sentence could have potentially exceeded a 25 year to life sentence had he

27  been convicted of one or more of the dismissed felony counts.

28         Petitioner's claim that "trial counsel was appointed only to convince [him] to take a deal,

and that trial counsel convinced him to take a plea and receive a 25-years-to-life sentence even

though there was no direct evidence or witnesses placing him at the scene of the crime[,]" is

without merit.  (Amend Pet. at 43-44.)  As Respondent correctly submits, the record refutes these

allegations, and Petitioner has provided no documentation or support for his unsubstantiated

claim of coercion.[7]  The transcript from Petitioner's change of plea hearing demonstrates that he

knowingly and voluntarily waived his right to a jury trial and was not coerced into doing so by

defense counsel.  Prior to pleading no contest to one count of robbery, the trial court asked

Petitioner if he had enough time to speak with trial counsel about the plea agreement, and

Petitioner replied, "yes."  (CT 195.)  Petitioner further acknowledged that he understood the

terms of the plea agreement, and understood what the attorneys had represented to the trial court

about the plea agreement.  (CT 195.)  Petitioner further recognized that he had a right to a jury

trial (CT 195), that he had a right to confront and cross-examine witnesses (CT 195), that he had

a right to put on a defense (CT 196), that he was specifically giving up his right to a trial (CT

196), and that he had a right against self-incrimination (CT 196).  Petitioner further affirmed to

the trial court that nobody had made him any promises to induce his plea, that he had not been

threatened into entering a plea, and that he was making a plea freely and voluntarily.  (CT 197.)

Trial counsel stipulated that there was a factual basis for Petitioner's plea, and the trial court

accepted that stipulation.  (CT 197.)  Petitioner thereafter pleaded no contest to one count of

second degree robbery, and admitted two prior strike conviction allegations, a prior prison term

allegation and that the instant offense was a serious felony.  (CT 199-201.)

Petitioner's contention that counsel failed to advise him of lesser included offenses and

did not discuss possible defenses, is too without merit.  Petitioner provides no evidence or

support in the record that would demonstrate that had he went to trial a conviction on any lesser

included offenses would have prevailed, much less what the lesser included offenses would have

been.  Moreover, Petitioner fails to identify any potential defense to which counsel should have

---

[7] To the extent Petitioner is claiming incompetence to enter a plea, there are no facts to support Petitioner's contention.  Petitioner has failed to present evidence to demonstrate that he was incompetent to plead guilty.  See Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621 (1977) (collateral attack of plea based on conclusory allegations unsupported by specifics is subject to summary dismissal).

1  advised, much less that the defense would have potentially prevailed at trial.  See <u>United States v.</u>

2  <u>Keller</u>, 902 F.2d at 1395 ("resolution of the 'prejudice' inquiry will depend largely on whether

3  the affirmative defense likely would have succeeded at trial.") (citing <u>Hill</u>, 474 U.S. at 59, 106

4  S.Ct. at 371.)  Further, Petitioner specifically waived his right to put on a defense.  (CT 196.)

5  Petitioner's claims are nothing more than vague and conclusory allegations void of factual

6  support.  Conclusory allegations do not warrant habeas relief.  See <u>Jones v. Gomez</u>, 66 F.3d at

7  204-05 (holding that conclusory allegations made with no reference to the record or any

8  document do not merit habeas relief).  Thus, Petitioner has failed to demonstrate that but for

9  counsel's alleged errors, he would have insisted on going to trial.  Petitioner therefore fails to

10  meet the <u>Strickland</u> prejudice prong.

11       Petitioner's contention that counsel was ineffective for failing to submit a California

12  Department of Corrections 969b package for purposes of proving the prior convictions, is

13  without merit.  At the time of taking his plea, Petitioner admitted the prior convictions as

14  follows:

15       [DISTRICT ATTORNEY]: With regard to the priors, sir, it is further
alleged that on or about January 19, 1995, in the Superior Court, County of San

16  Bernardino, Case Number FWV04071, State of California, that you were
convicted of a prior felony offense, to wit, Penal Code Section 211, robbery,

17  within the meaning of Subdivision (c) through (j) of Penal Code Section 667 and
subdivisions (a) through (e) of Penal Code Section 1170.12.

18       Do you admit or deny that?
     [PETITIONER]: Admit.

19       [DISTRICT ATTORNEY]: It is further alleged that on or about January
19, 1995, in the Superior Court, State of California, County of San Bernardino,

20  Case Number FWV04071, that you were convicted of a serious felony within the
meaning of Penal Code Section 667(a), to wit, Penal Code Section 211(a),

21  robbery.
     Do you admit or deny that?

22       [PETITIONER]: I admit.
     [DISTRICT ATTORNEY]: It is further alleged that on or about January

23  19, 1995, in the Superior Court, State of California, County of San Bernardino,
Case Number FWV04071, that you were convicted of a prior felony offense, to

24  wit, Penal Code Section 245(a)(2), assault with a firearm on a person within the
meaning of subdivisions (c) through (j) of the Penal Code Section 667 and

25  subdivisions (a) through (e) of the Penal Code Section 1170.12.
     Do you admit or deny that?

26  [PETITIONER]: I ADMIT
     [DISTRICT ATTORNEY]: And, finally, it is alleged that on or about

27  January 19, 1995, in the Superior Court of the State of California, San Bernardino
County same case, Case Number FWV04071, convicted of the crime of Penal

28  Code Section 245(a)(2), assault with firearm on a person, a felony, and that you

served a separate term in prison, state prison, for one year or more, and that you did not remain free of prison custody for and did commit an offense resulting in a felony conviction during a period of five years subsequent to the conclusion of that term within the meaning of Penal Code Section 667.5(b).

          Do you admit or deny that?

          [PETITIONER]: I admit.

(CT 200-201.)

Because Petitioner admitted the prior convictions, there was no reason for counsel to submit any evidence regarding the prior convictions.  In any event, for the reasons explained below Petitioner does not submit a valid argument regarding the validity of the prior convictions. As such, Petitioner has failed to demonstrate that counsel was incompetent or that he was prejudiced as a result.  The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

E.    Invalidity of Plea Agreement

Petitioner contends that he was confused at the time of his plea, that he did not understand the nature of the proceedings, that the trial court failed to explain the elements of the offenses, and that he did not make a knowingly and intelligent waiver of his right to a jury trial.

A plea of guilty is constitutionally valid only to the extent it is "voluntary" and "intelligent." Brady v. United States, 397 U.S. 742, 748 (1970).  In determining whether a plea was knowingly, voluntarily and intelligently made, a reviewing court must accord a strong presumption of verity to the declarations made by a defendant in open court. Blackledge v. Allison, 431 U.S. 63, 74 (1977).  "[R]epresentations [made by] the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Id. at 73-74. Furthermore, Petitioner's allegations of a coerced plea must be specific and point to a real possibility of a constitutional violation. "[S]ubsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id. at 74, citing Machibroda v. United States, 368 U.S. 487, 495-496 (1962); Price v. Johnston, 334 U.S. 266, 286-287 (1948).

To the extent Petitioner claims that he was confused, did not understand the nature of the

proceedings, and that the trial court failed to explain the elements of the offense, the transcript of

the plea negates Petitioner's claim.  At the time of taking Petitioner plea, the trial court advised

the following:

> THE COURT: All right.  Before I take the plea, let me talk to you about your rights a little bit, sir.
> [Petitioner]:  If you not [sic] did not make this plea today, there would be a trial a week from Monday.
> You do understand you had a right to have such a trial?
> [PETITIONER]: Yes, sir.
> THE COURT: If there was such a trial, you and your attorney would have had the right to confront and cross-examine, ask questions of any witnesses who might have gotten up here to testify against you.
> You do understand you had that right?
> [PETITIONER]: Yes, sir.
> THE COURT: You also had the right to put on your own defense.  You could have called witnesses to testify to help you, and even if they didn't want to come to court, you could use the power of the court to force them to come to testify to help you.
> Do you understand you've had that right?
> [PETITIONER]: Yes, sir.
> THE COURT: Sir, if you make this plea, there isn't going to be any such a trial.
> Do you understand that?
> [PETITIONER]: Yes, sir.
> THE COURT: So do you give up your right to that trial?
> [PETITIONER]: Yes, sir.
> THE COURT: You also had the absolute right against self-incrimination. That simply means that no one can make you say or do anything against your own interests.
> Do you understand you have that right?
> [PETITIONER]: Yes, sir.
> THE COURT: If you make this admission and enter this plea, you will incriminate yourself.
> Do you understand that?
> [PETITIONER]: Yes, sir.
> THE COURT: All right, sir.  And so do you give up that right?
> [PETITIONER]: Yes, sir.
> THE COURT: All right. [Petitioner], I have no idea whether you're a citizen or not, and I don't want to know.  I need to inform you that if you are not a citizen, your plea today could make it difficult or impossible to become one.
> Do you understand that?
> [PETITIONER]: Yes, sir.
> THE COURT: Sir, has anyone made any promises to you, other than what we've talked about right here, to get you to enter this plea?
> [PETITIONER]: No, sir.
> THE COURT: Has anyone threatened you or anyone close to you to get you to do this?
> [PETITIONER]: No, sir.
> THE COURT: Are you making this plea freely and voluntarily?
> [PETITIONER]: Yes, sir.
> . . .
> [PROSECUTOR]: It's alleged in the amended Information in Count 1 that

on or about September 30, 2001, you did willfully and unlawfully take personal property in possession of Katrine Burke from her person or immediate presence and against her will by means of force or fear within the meaning of Penal Code Section 212.5 subdivision (c), a felony.
It is further alleged that this offense is a serious felony within the meaning of Penal Code Section 1192.7 subdivision (c) subsection - - sub - - it's actually subsection (c) subdivision (19).
To that charge, how do you plead?
        [PETITIONER]: No contest.
        THE COURT: [Petitioner], do you understand that I will treat a no-contest plea exactly the same as a guilty plea for purposes of sentencing?
        [PETITIONER]: Yes, sir.

(CT 195-200.)

The record supports the conclusion that Petitioner's no contest plea was made voluntarily. Petitioner was aware of the nature of the charges against him and of the possible sentence if he proceeded to trial.  Pursuant to the plea agreement, Petitioner pled guilty to one count of second-degree robbery, admitted two prior strike allegations and a prior prison term in exchange for having four other felony counts dismissed and receiving a sentence "lid" of 25 years to life in prison.  (CT 195-201.)

The record simply does not support Petitioner's conclusory and generic assertion that he was confused and did not understand the nature of the change of plea proceedings. Petitioner stated unequivocally that he understood that he was giving up his right to a jury trial, to confront witnesses, to remain silent and not incriminate himself, and to present a defense or even testify in his own behalf.  Petitioner confirmed that no other promises or threats had been made to him. (CT 199-201.)  The prosecutor provided a detailed factual basis in support of Petitioner's no contest plea.  (CT 199.)  As previously stated, Petitioner's declarations in open court carry a strong presumption of verity, and the trial court's determination here that Petitioner knowingly and intelligently waived his constitutional rights, understood the consequences of his no contest plea, constitutes a formidable barrier in any subsequent collateral proceedings.  Blackledge v. Allison, 431 U.S. at 73-74; CT 201-202.

Petitioner's claim that he did not understand the plea agreement is undermined by his statement to the court that he understood the terms of the plea agreement and sentence that he faced.  (CT 193-193.)  Petitioner stated that he had ample opportunity to discuss the plea

17

1   agreement with his counsel.  (CT 195.)

2   Petitioner's contention that he was coerced into entering the plea by trial counsel is

3   unfounded and conclusory.  "Mere advice or strong urging by [counsel or] third parties to plead

4   guilty based on the strength of the state's case does not constitute undue coercion."  Iaea v. Sunn,

5   800 F.2d 861, 866-867 (9th Cir. 1986).  Based on the strength of the state's case as set forth at the

6   preliminary hearing (see CT 15-132), and Petitioner's potential sentence exposure if he

7   proceeded to trial, counsel's advise to plead guilty appears reasonable.  As previously stated,

8   pursuant to the plea agreement Petitioner's sentence range was capped at the maximum sentence

9   of 25 years to life, even though he could have been sentenced to a greater term based on his plea;

10  that is, Petitioner could have received an additional five year sentence for the section 667(a)

11  enhancement that he admitted.  (CT 198-199.)  Without the plea, Petitioner's sentence could

12  have potentially exceeded a 25 year to life sentence had he been convicted of one or more of the

13  dismissed felony counts.  There is nothing in the record that indicates Petitioner's plea or

14  admissions in open court were anything but truthful and voluntary.  The state courts'

15  determination of this issue was not contrary to, or an unreasonable application of, clearly

16  established Supreme Court precedent.

17  F.     Breach of Prior Plea Agreement

18  Petitioner contends that his January 1995 guilty plea in San Bernardino County to one

19  count of robbery and one count of assault with a firearm is invalid because at the time of his plea,

20  he was not advised that these convictions could be used in future proceedings to enhance his

21  sentence.  Petitioner further objects to the use of the 1995 conviction for assault with a firearm as

22  a serious felony conviction because there was insufficient evidence to support that prior

23  conviction.  Petitioner argues that the prosecution did not produce a California Department of

24  Corrections section 969(b) package to prove that the assault with a firearm conviction qualified

25  as a strike conviction.  In addition, he claims that he was not informed prior to his plea in the

26  instant case of his status as a two strike offender.

27  Petitioner's contention that there was insufficient evidence that his prior convictions were

28  serious felonies is an improper claim for review in a habeas proceedings, because Petitioner

1  entered a no contest plea prior to trial, and admitted the truth of those prior strike allegations.

2  (CT 188-190, 193-202.)  Petitioner can only raise objections to the voluntariness of his guilty

3  plea in a petition for writ of habeas corpus.  Tollet v. Henderson, 411 U.S. at 267.

4  Moreover, as Respondent submits, Petitioner was informed at the time of his plea in the instant

5  case that his 1995 conviction for assault with a firearm (§ 245(a)(2)) was a strike conviction.

6  (CT 194.)  Petitioner specifically admitted that his 1995 conviction for assault with a firearm was

7  a serious felony within the meaning of sections 667(c) through (j) and 1170.12(a) through (e).

8  (CT 200-201.)  He admitted the same with regard to his prior conviction for robbery.  (CT 200-

9  201.)  Therefore, the record reveals that Petitioner was adequately advised and understood that

10 his prior convictions were qualifying strikes within California Three Strike's law.

11         With regard to Petitioner's claim that he was not advised that the 1995 convictions could

12 later be used to enhance his sentence under California's Three Strikes law, it is without merit.

13 Due process requires that a defendant be informed of all the *direct* consequences of a guilty plea.

14 Brady v. United States, 397 U.S. 742, 749 (1970).  There is no due process violation where a trial

15 court fails to inform the defendant of *collateral* consequences, such as the potential for

16 enhancement in the future.  United States v. Garrett, 680 F.2d 64, 65-66 (9th Cir. 1982).  Thus,

17 Petitioner's lack of knowledge that the 1995 conviction could later be used to enhance a future

18 sentence does not violate due process or invalidate the prior conviction.

19         With regard to Petitioner's claim that the use of the prior convictions to enhance his

20 current sentence was a breach of the prior plea agreement, it is without merit.  When a plea

21 agreement rests in any significant degree on a promise or agreement of the prosecutor, so that it

22 can be said to be a part of the inducement or consideration, such promise must be fulfilled.

23 Santobello v. New York, 404 U.S. 257, 22 (1971).  Here, there is no indication that any promise

24 *not* to use the 1995 convictions was made during the plea negotiations, nor does Petitioner make

25 any such allegation.  Accordingly, as there is no basis for finding that such a promise was

26 included in the 1995 plea agreement, the agreement was not violated by virtue of the current

27 enhancement.  Moreover, the sentence imposed under Three Strikes is not additional punishment

28 for the prior convictions, but rather a stiffened penalty for the latest crimes.  See Monge v.

1  California, 524 U.S. 721, 728 (1998).

2  G.      Ex Post Facto Violation

3          Petitioner contends that the use of his January 1995 convictions violates the Ex Post

4  Facto laws of the State and Federal Constitutions.

5          The ex post facto clause prohibits a state from enacting a law that imposes additional

6  punishment for a crime than the punishment was when the defendant committed the crime.

7  Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 964 (1981).  A law violates the ex post facto

8  clause under three circumstances:  (1) when it punishes an act which was not a crime when it was

9  committed; (2)  when it makes a crime's punishment greater than when the crime was committed;

10 or (3) when it deprives a person of a defense available at the time the crime was committed.

11 Collins v. Youngblood, 497 U.S. 37, 42, 110 S.Ct. 2715, 2719 (1990).  A statute enhancing a

12 defendant's sentence because the defendant is a recidivist does not punish the defendant again for

13 the prior offense.  Wittie v. United States, 515 U.S. 389, 400, 115 S.Ct. 2199, 2206 (1995).

14 Recidivist statutes have been upheld in the face of ex post facto arguments even if the

15 convictions used to enhance the sentence occurred before the recidivist statute was enacted.  See

16 United States v. Ahumada-Avalos, 875 F.2d 681, 683-84 (9th Cir. 1989) (per curiam).

17         Due to the passage of Proposition 21, beginning of March 8, 2000, the crime of assault

18 with a firearm in violation of section 245(a)(2), became a serious felony within the meaning of

19 the "Three Strikes" law.  People v. Jones, 91 Cal.App.4th 1147, 1151 (2001).  Thus, the crime of

20 assault with a firearm was a strike within the meaning of the "Three Strikes" law at the time

21 Petitioner committed the instant offense in 2001.  Petitioner's sentence on his 1995 offenses has

22 not been increased or changed in any way.

23         Moreover, to the extent Petitioner attempts to challenge the substance of his 1995 plea

24 agreement and the underlying conviction to which he pled guilty, such a claim is not cognizable

25 in this proceeding.  In Lackawanna v. Cross, 532 U.S. 394, 403 (2001), the court held that

26         once a state conviction is no longer open to direct or collateral attack in its own
           right because the defendant failed to pursue those remedies while they were still
27         available (or because defendant did so unsuccessfully), the conviction may be
           regarded as conclusively valid. [Citation.] If that conviction is later used to
28         enhance a criminal sentence, the defendant generally may not challenge the

                                                      20

enhanced sentence through a petition under 2254 on the ground that the prior conviction was unconstitutionally obtained.

Petitioner is no longer in custody on his 1995 convictions.  He may not, therefore, in this proceeding challenge his current sentence vis a vis a challenge to his 1995 convictions or the plea bargain that gave rise to these convictions.  Moreover, the United States Supreme Court's holding in Lackawanna bars Petitioner from challenging the underlying validity of his 1995 strike offenses.  Lackawanna v. Cross, 532 U.S. at 403.

ORDER

Based on the foregoing, it is HEREBY ORDERED that:

    1.     The petition for writ of habeas corpus is DENIED; and

    2.     The Clerk of Court is directed to enter judgment in favor of Respondent.

IT IS SO ORDERED.

**Dated:   March 10, 2006**               **/s/ Dennis L. Beck**
3b142a                                 UNITED STATES MAGISTRATE JUDGE